# Dunn v. Dean.

### Mandamus.

(Decided April 20, 1916. 71 South. 709.)

1. **Statutes; Title; Sufficiency.**—Local Acts 1915, p. 293, is not violative of § 45, Constitution 1901, declaring that each law shall contain but one subject which shall be clearly expressed in its title.

2. **Same; Enactment; Local Laws; Notice.**—The body of the bill embracing provisions of law operated during the year 1916, the words "next session" contained in the notice of publication must be construed as meaning "next sitting" instead of "next session," said notice appearing pending the recess of the legislature, and the publication, therefore, must be held sufficient under § 106, Constitution 1901.

3. **Same.**—As there was no general law providing for a similar body created by Local Acts 1915, p. 293, the law was not invalid as being upon a subject covered by a general law.

[Dunn v. Dean.]

4. **Jury; Trial; Vacation of Officer.**—The provisions of § 16, Local Acts 1915, p. 293, are invalid as violative of §§ 6 and 105, Constitution 1901.

5. **Statutes; Partial Invalidity; Effect.**—If the invalid section may be stricken from the Act, leaving a statute complete within itself, sensible and capable of being executed, the striking of the invalid section does not overthrow the entire act. This rule saves Local Acts 1915, p. 293, notwithstanding § 16 thereof is invalid.

6. **Constitutional Law; Separating Powers; Blending.**—The provisions of Local Acts 1915, p. 293, are not violative of §§ 32 and 43 of the Constitution of 1901.

7. **Statutes; Local Laws; Validity.**—As the Act only creates originally the districts for the purpose of defining the territory in which the electorate may vote for a member of the board resident of that district and assigns a member of the board to each of the districts, Local Acts 1915, p. 293, is not violative of §§ 29 and 104 of the Constitution of 1901.

8. **Same.**—As the compensation theretofore allowed the probate judge was for mere incidental services, and the act relieved him from the duties theretofore imposed upon him by law, Local Acts 1915, p. 293, was not invalid as violative of § 104, subdivision 24, Constitution 1901, since it merely withheld compensation allowed for services for duties that were dispensed with.

9. **Same; Journal.**—In determining whether an act was passed with all constitutional formalities, the courts can look only to the journals of the legislative houses.

10. **Same; Validity.**—Where the journal showed the introduction of Local Acts 1915, p. 293, and its reference to the standing committee on ways and means, and then recited the consideration and favorable report of the bill by the standing committee on mines and manufactures, it failed to show a compliance with § 62, Constitution 1901, and was consequently invalid.

APPEAL from Conecuh Circuit Court.

Heard before Hon. A. E. GAMBLE.

Mandamus by Henry W. Dunn against F. J. Dean as Judge of Probate, to compel respondent to receive relator's declaration, and place his name upon the ballot of his party to be voted for for the office of County Commissioner under the general law. From a judgment denying the writ relator appeals. Reversed and rendered on rehearing.

HAMILTON & STALLWORTH and D. M. POWELL, for appellant. E. E. NEWTON, for appellee.

McCLELLAN, J.—In an appropriate way the appellant sought to qualify as a candidate for the Democratic nomination, in the primaries to be held on the 9th day of May, 1916, for "county commissioner of Conecuh county." His declaration was refused receipt by the judge of probate; and this proceeding

[Dunn v. Dean.]

seeks the writ of mandamus to compel official action by that officer, to the end that appellant may have the ballot of his party on his aspiration. The judge of probate declined to receive appellant's declaration, for the reason that the office to the nomination for which he aspired had been abolished by a local act approved September 7, 1915 (Local Acts 1915, pp. 293-296). The appellant insists that the local act noted is unconstitutional and void, and is, hence, no valid obstacle to the action he sought the judge of probate to take in his declaration of candidacy for county commissioner. The circuit judge denied the petition for the writ, and this appeal is for a review of his ruling. The local act under consideration has this title: "To establish a board of revenue for Conecuh county, to provide for their election and prescribe their powers and duties, to divide the county of Conecuh into five districts, and abolish the court of county commissioners for Conecuh county."

Section 1 establishes a board of revenue for Conecuh county. Section 2 divides the county into five defined districts. Section 3 provides for the election, at the general election in 1916, of one member of the board for, and by the qualified electors in, each of the five districts, fixes the qualifications for incumbents, and apportions the terms so that three of the members first elected shall hold office for two years and two of them for four years, and thereafter that their successors shall be elected for terms of four years. Section 4 provides for regular and special sessions of the board. Section 5 requires the members of the board to elect a president thereof. Section 6 makes provision for filling vacancies on the board. Sections 7, 8, 9, 10, and 12 prescribe the authority, power, and jurisdiction conferred on the board. Section 11 provides for the signature of county warrants by the president of the board, and for other services by the presiding office, and prescribes that: "He shall receive a reasonable compensation not exceeding $3.00 per day nor the amount of $150.00 per annum."

Section 13 makes further provision for services by the president, and allows him "fifteen cents per one hundred words for recording the proceedings of the said board," and exacts that the recording be done within a fixed period after each meeting. Section 14 provides that, when acting judicially, the board is a court of record. Section 15 provides for the furnishing of information to the board by the clerks of courts in the county that

will serve to acquaint the body with fines and forfeitures taken during the term by the courts and judgments entered during the terms for the use of the county. Section 16 requires the publication, quarterly, by the body of statements of the receipts and disbursements of county funds, and for the vacation of "their offices" if the board fails or refuses to publish the statements required, and for the filling by the Governor of the vacancies thus occasioned when the prescribed certificate of the fact is filed with the Governor. Section 17 provides for the compensation and mileage of members. Section 18 requires the body's sessions to be held at the county seat. Section 19 abolishes the commissioners' court of that county at the expiration of the terms of the present commissioners. Section 20 is the usual repealing clause.

(1) The several grounds on which appellant rests his contention that the local act is void will be indicated in the opinion. The sufficiency of the title before quoted, as for any supposed violation of section 45 of the Constitution, must be pronounced in view of the following authorities: *State v. Teasley,* 194 Ala. 574, 69 South. 723; *Thomas v. Gunter,* 170 Ala. 165, 54 South. 283; *Griffin v. Drennen,* 145 Ala. 128, 40 South. 1016; *Sheffield Co. v. Pool,* 169 Ala. 420, 53 South. 1027.

(2) The local act under review was published in June, 1915, in a newspaper in Conecuh county. The caption of the notice so published read: *"Notice of Local Law.* Notice is hereby given that at the next session of the Legislature of Alabama, the following bill, in substance, will be introduced."

The Legislature of 1915 convened in January, 1915, and later, but before the month of June, 1915, recessed until during July, 1915. Section 106 of the Constitution requires the publication of notice of intention to seek the enactment of a local law, its substance being set forth in the notice. It is urged against this local act that the use, in the published notice alone, of the words "next session of the Legislature of Alabama" denoted a purpose to move for the enactment of the substance of the local legislation set forth in the notice at the session of the Legislature to convene in January, 1919, that being, it is urged, the next session of the Legislature of the state. There is no sound basis for such an insistence. The whole publication must be considered in determining the intent thereof. It is manifest from the body of the proposed law as published that the intent of the movers for the proposed legislation embraced provisions of law operative during

the year 1916, long previous to the convention of the Legislature in January, 1919. The words "next session" in the caption of the published notice are, in necessary relation to those words, only susceptible of this meaning: During "next sitting" of the Legislature after the prescription of section 106 as to the period of publication has been complied with.

(3) It is urged that this local act is void for that it violates these provisions of section 105 of the Constitution: "No special, private or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law; * * * and the courts and not the Legislature, shall judge as to whether the matter of said law is provided for by a general law. * * *"

By way of interpretation and construction of section 105 this court has made a number of pronouncements. In view of the objections made against this local law, based upon the quoted provisions of section 105 of the Constitution, it is desirable to bring together these expressions of this court defining the purpose and effect of this section of the Constitution. In *Sisk v. Cargile,* 138 Ala. 164, 171, 172, 35 South. 114, 116, it was said: "Section 104 of the Constitution prohibits the Legislature from passing a special or local law in any one of 31 specified instances. A local law, as here referred to, is defined, under another section —section 110—to be one which applies to any subdivision or subdivisions of the state, less than the whole, and a special or private law is one which applies to an individual, association, or corporation. There are an indefinite number of local, private, and special interests, impossible to be anticipated, and which the framers of the Constitution did not attempt to enumerate. They did provide by section 105, that 'No special, private or local law, except the law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state.' In this connection it may be stated that there is no general law in Alabama authorizing the levy of a tax for the payment of debts incurred for road purposes, and no relief can be had in the courts, since the levy of a tax is a legislative power. They also provided by section 109 that: 'The Legislature shall pass general laws under which local and private interests shall be provided for and protected.' When, however, the relief in this class of undefined local, special, and private interests is not provided for by general

[Dunn v. Dean.]

laws, and the Legislature has failed to pass such laws, there is nothing in the Constitution which is a limitation on the right of the Legislature to pass special, private, or local laws except in one of the 31 specified instances named in said section 104. In these instances, the Legislature must pass general statutes for relief, or none can be had, unless the same is already provided for by a general law. Section 109 was intended to impose a duty on the Legislature by the enactment of general laws to that end, to protect local, private, and special interests, but it is not, as in the 31 enumerated instances in section 104, a limitation on its power to pass special laws to this end. The power of the Legislature to pass laws of a private, local, or special interest was unlimited; and, outside or beyond these 31 specified instances, the Legislature has the same power it had before the adoption of the present Constitution, provided there is no general law under which relief is granted or may be had."

In *City Council v. Reese,* 149 Ala. 188, 190, 191, 43 South. 116, 117, it was written: "It is apparent that the subject-matter of the two acts is substantially the same; and it is equally apparent that the inhibition contained in the section of the Constitution quoted was violated by the enactment of the special or local law. It is of no consequence that the special or local act contains matter germane to the subject expressed in its title, "to authorize the city council of Montgomery to refund the bonded indebtedness of said city,' etc., which are not in the general law; for, obviously, if the insertion of such matters in a special, local, or private law would obviate the constitutional prohibition, then the prohibition could be easily circumvented and practically rendered nugatory. It is not perceivable that the framers of the Constitution intended the prohibition to operate only against special, local, or private laws which are in ipsis verbis of the general law. It follows, therefore, that we are constrained to hold the act of September 26, 1903, to be unconstitutional and void."

In *Little v. State,* 137 Ala. 659, 668, 35 South. 134, 136, it was said with reference to section 105, among others noted in the opinion: "This view is emphasized, re-enforced, and made certain to the judicial mind when taken in connection with the sections above referred to, other than section 104, directing that the Legislature shall pass general laws for the cases enumerated in section 104, and providing that no special, private, or local law * * * shall be enacted in any case, which is provided for by general law."

In *Forman v. Hair,* 150 Ala. 589, 593, 594, 43 South. 827, 829, it was said: "Section 105 of the Constitution is very broad and sweeping in its terms. Its purpose is manifest, and the Legislature is positively forbidden and prohibited from enacting any special, private, or local law, except a law fixing the time of holding courts, and regulating or prohibiting the liquor traffic, in any case which is provided for by a general law, or when the relief sought could be given by any court of this state. Prior to the adoption of the present Constitution, this court held (*Clarke v. Jack,* 60 Ala. 271) that it was the province of the Legislature to determine whether or not the 'cause' was provided for by a general law, or the relief sought could be given by any court. But this section (105) provides that the courts, and not the Legislature, shall judge as to whether the matter of said law is provided by a general law. If, therefore, the issue of the bonds by St. Clair county was provided for by the general law, approved February 26, 1903, the Legislature was forbidden to pass the act approved September 26, 1903, and the courts, and not the Legislature, are to determine that question. But this is not a case provided for by the general law of February 26, 1903, for the reason that the election was held prior to its enactment."

In *Norwood v. Goldsmith,* 168 Ala. 224, 231, 53 South. 84, 86, it was said: "What was said in the case of *Montgomery City v. Reese,* 149 Ala. 190, 43 South. 116, is equally applicable and true in this case, and is decisive of this question: 'Section 105, art. 4, of the Constitution provides that: "No special, private or local law, except a law fixing the time for holding courts, shall be enacted in any case which is provided for by general law, * * * and the courts, and not the Legislature, shall judge as to whether the matter of said law is provided for by a general law. * * * Nor shall the Legislature indirectly enact any such special, private or local law by the partial repeal of the general law." It is apparent that the subject-matter of the two acts is substantially the same; and it is equally apparent that the inhibition contained in the section of the Constitution quoted was violated by the enactment of the special or local law,' " etc.

In *City Bank & Trust Co. v. State,* 172 Ala. 197, 201-205, 55 South. 511, 512, it was said: "In application of a pertinent phase of section 105 of the Constitution of 1901 it has been accepted here that a test of the exemption of a local, private, or special law from the condemnation of the section, because provision has

[Dunn v. Dean.]

already been made therefor by a general law, is whether the proceeding or action contemplated by the local, private, or special law might have been, in substance and not in respect of detail merely, taken or had under the general law. If so, the local, private, or special act violates the section (105) and is void.—*Brandon v. Askew,* 172 Ala. 160, 54 South. 605; *City of Montgomery v. Reese,* 149 Ala. 188, 43 South. 116; *Forman v. Hair,* 150 Ala. 589, 43 South. 827; *City of Ensley v. Simpson,* 166 Ala. 366, 52 South. 61; *Norwood v. Goldsmith,* 168 Ala. 224, 53 South. 84. * * * It was also noted, in that case, that by express provisions of section 105 the determination of inquiries whether the matter of the local, private, or special law was 'provided for by a general law,' and whether the relief sought could be 'given by any court,' was committed to the courts, and not left with the Legislature. The soundness of the doctrine of *City of Montgomery v. Reese,* has not been questioned or departed from. It is obvious from the unequivocal terms of section 105, that the enactment of local, private, and special laws is prohibited in all cases, not expressly excepted in that section (105), where the matter is provided for by general law, or where any court can give the relief the local, private, or special law would afford. In concrete cases the inquiry open must be, not what the section (105) prohibits, but whether the enactment assailed falls within either of the categories created by the section. As appears from the quotation from the *Reese Case, supra,* the application of the section is not to be determined by the fact that the enactment assailed is not ipsis verbis of the general law, nor by the fact that matter germane to the general law is contained in the enactment assailed. In short, the test is, as before stated, whether the subject-matter of the general law and of the local, private, or special law is the same.—Authorities supra."

The local act mentioned is assailed as constitutionally invalid, under section 105, because the subject-matter was, at the time of its approval, already provided for by the general law approved February 26, 1903. * * * The subject-matter of each act, the general and the local, is substantially the same; the latter being more ample in legislatively fixed detail of accomplishment of the purpose common to both acts. In *Green v. State,* 143 Ala. 2, 7, 8, 39 South. 362, 364, it was said: "The general law was different from this, requiring a special venire for each capital case. The relief sought by this amendment could not be obtained

under any general law then existing,.or the local law as stated would have been unnecessary. It in no sense, therefore, offends that provision of the Constitution (section 105) which prohibits the Legislature from enacting any special or local law by the partial repeal of a general law."

In *City of Ensley v. Simpson*, 166 Ala. 366, 373, 374, 52 South. 61, 64, it was said: "The departure worked by section 105 of the Constitution of 1901 has significance. The inhibition now is against special, private, or local laws in any case which is provided for by a general law, of which the courts shall judge. Formerly the inquiry was whether the Legislature could provide for ·a particular case by general law. Now the question is whether it .has so provided. We need not be understood as impairing the authority of *City Council of Montgomery v. Reese*, 149 Ala. 188, 43 South. 116. The court there said that it could not perceive that the framers of the Constitution intended the prohibition to operate only against special, local, or ·private laws which are in ipsis verbis of the general law. The effect of the ruling was that the enactment of a general law authorizing municipal corporations to issue bonds to run not exceeding 30 years, while permitted to stand upon the statute books, operated as a constitutional inhibition against any act permitting any particular municipality to issue bonds to run not exceeding 30 years. Appellee's argument applies that decision to the case in hand as follows: The general statute permitting the alteration or rearrangement of municipal boundaries by the acquisition of contiguous territory only, while it stands, must operate as a constitutional inhibition against any act consolidating noncontiguous municipalities, if at the same time, and in order to preserve the unity and contiguity of the consolidated municipality, as perhaps is necessary to the validity of the act (*City of Denver v. Coulehan*, 20 Colo. 471, 39 Pac. 425, 27 L. R. A. 751), intervening territory,.contiguous to both of the constituent municipalities, is included in the act of consolidation. The subject of legislation in the general law is the alteration or rearrangement of boundaries as affecting contiguous municipalities and unincorporated territory. The subject-matter dealt with in the special act is the alteration or rearrangement of boundaries as affecting non-contiguous municipalities as well. Considered in their totality the two acts are not identical as to subject-matter. We therefore conclude that the special act is not obnoxious to section 105 of the Constitution."

[Dunn v. Dean.]

In *Brandon v. Askew*, 172 Ala. 160, 163, 164, 54 South. 605, 606, it was said: "In his opinion, which has been incorporated into the transcript, the learned judge of the Fifteenth circuit held, that the act of March 2, 1907, was violative of section 105 of the Constitution of 1901. The relevant provision of that section is expressed as follows: 'No special, private or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state.' His theory, we gather, was that so long as there is to be found in the statute book a law fixing the salary of circuit solicitors in general terms, the Legislature is without power, when creating a new office of that character, to fix the salary of the new officer at a different amount. This opinion involved of course a holding that the act under consideration is a local act. And it has been so held.— *State ex rel. Attorney General v. Sayre*, 142 Ala. 641, 39 South. 240 [4 Ann. Cas. 656]. Whatever of obscurity there may be in this provision of the Constitution, it is certain that it was not intended to prohibit all local legislation. It was not intended to prohibit local legislation on subjects according to any specific classification. That was done in section 104, where those classes of local laws which were to be prohibited are catalogued, and presumptively the framers of the Constitution said in that section all they intended to say on that subject. It was not intended to operate against local legislation in those cases where a local statute undertakes to do something that has been precisely done in a general law. It could not be assumed that the Legislature would waste its time in the duplication of statutes. But if the local bill proposes something different from the provisions of the general law, and not within the catalogue of section 104; and in a case where the relief may not be had in some proceeding outside of the Legislature, how has it been provided for, and where is the inhibition to enact the local law? It seems, then, that this provision of the Constitution was intended to prohibit the enactment of special, private, or local laws to meet the purposes of particular cases which may be accomplished by proceedings outside of the Legislature under the provisions of general statutes enacted to meet all cases of their general character. And it is made the duty of the Legislature to pass general laws under which local and private interests shall be provided for and be protected.—Const. § 109. Such seems to have been the accept-

ance of this provision in *City Council of Montgomery v. Reese*, 149 Ala. 188, 43 South. 116. It may be, conceded that if the Legislature creates a new judge or solicitor, in the absence of provision to the contrary, the new officers would take their salaries under the general provision of the Code. But no Legislature can dispose of the right of its successors to provide for and protect a local, special, or private interest by local, special, or private law, except by the enactment of a general law under which the local, special, or private interest may be adequately provided for and protected without further legislation. There was, of course, and could be, no way of providing for a new circuit with its necessary officers except by a legislative enactment for that purpose. New circuits may therefore be arranged and the salaries of its officers fixed according to the legislative opinion at the time of the public necessity for which provision and relief is to be made. In our opinion the statute creating the Fifteenth circuit, as for the objection here taken to it, evidences in all its parts a valid exercise of the legislative power.—*Ensley v. Simpson*, 166 Ala. 366, 52 South. 61."

A consideration of the decisions noted and quoted, makes manifest the fact that this court has neither entertained nor expressed any degree of departure from or qualification of the interpretation of the above-quoted provisions of section 105 of the Constitution soundly established in *Sisk v. Cargile, City Council v. Reese*, and *Forman v. Hair*, in and by the expressions before reproduced from the opinions in those cases.

The local act under review has no substantial counterpart, in respect of its paramount features and purposes, in any general law to which this court has been referred, or of which it is now informed. This act's chief object and dominant purpose and effect was and is to create a county governing body different in personnel; in the selection of its personnel; in the tenure of its personnel; from that provided by the general laws for the constitution and creation of the courts of county commissioners in the state. The powers, duties, and jurisdiction of the body created by this act are practically the same as those conferred upon and required of the courts of county commissioners. Indeed, if the change sought to be wrought by this local act had been but an effort to alter the name of Conecuh's governing body, there would be no hesitation in pronouncing it invalid under the plain injunction of section 105 of the Constitution. But, as appears from our

[Dunn v. Dean.]

summary of the provisions of the local act, its purpose and effect is far greater than any mere change of name or alteration in respect of minor detail within the rule established in *City Council v. Reese,* 149 Ala. 188, 43 South. 116. It creates a body constituted of members separately chosen by the electorate of separate districts, thus excluding the judge of probate who, under the general law, was the presiding officer of the commissioners' court. This departure from a body the members of which were chosen by the electorate of the whole county, and for terms of four years (aside from the judge of probate who is chosen for a term of six years), to a body the constituents of which are elected by and from districts only, and for terms so ordered and arranged as to prevent the expiration of the terms of all the members at one time, are radical and, in proportion to the subject, superlative changes from the status fixed by general law to a status not contemplated or provided for by general laws. Our opinion, therefore, is that this act is not offensive to the quoted provisions of section 105 of the Constitution. We are advised of no provision of the Constitution that inhabits the Legislature from creating a county governing body as the result of elections of its members by the electorate of defined districts.

(4, 5) That provision of section 16 of the local act, whereby a failure or refusal to have quarterly statements published is attempted to effect, without trial and without reference to the established methods of impeachments, the vacation of the offices held by the members of the board, is patently void, being offensive to the following sections of the Constitution: 6 and 175. But this particular invalid feature of the act may be stricken therefrom without invalidating the remainder thereof which is "complete within itself, sensible, capable of being executed, and wholly independent of that which is rejected."—*State v. Davis,* 130 Ala. 148, 151, 30 South. 344, 89 Am. St. Rep. 23.

(6) This act does not offend sections 42 and 43 of the Constitution by blending in one body powers and authority that may be referred to the executive, legislative, or judicial phases of governmental action.—*Fox v. McDonald,* 101 Ala. 51, 69, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98; *Com'rs v. Moore,* 53 Ala. 25; *Jeffersonian Pub. Co. v. Hilliard,* 105 Ala. 576, 17 South. 112.

(7) The local act does not violate subdivision 29 of section 104 of the Constitution. It does not purport to make provision

for the "conduct of elections," or to designate places of voting, or to change the existing boundaries of wards, precincts, or districts. It assigns a member of the board to each of five districts for his election which the act itself originally creates for the purpose of defining the territory in which the electorate may vote for a member of the board resident of that district.

(8) The compensation provided by this act to be paid to members of the board for services in discharge of their official duties appears to be the same, aside from the limitation of $150, as that allowed by law for and to the judge of probate and members of commissioners' courts for like services.—Code, §§ 3720, 3322. Subdivision 24 of section 104 of the Constitution prohibits the Legislature from enacting any private, special or local law "creating, increasing, or decreasing fees, percentages, or allowances of public officers." In *Miller v. Griffith,* 171 Ala. 337, 342, 343, 54 South. 650, 652, it was said of the quoted provisions: "That section refers only to changing the compensation during the term of the officer, and cannot be construed as prohibiting the Legislature from making provisions for such matters as [are] applicable to officers subsequently appointed, nor for abolishing offices."

The obvious intent of the quoted provision of section 104 was to require uniformity in respect of fees, percentages, and allowances by prohibiting the enactment of local or special laws on those subjects. The result, in part, of the construction given these provisions in *Miller v. Griffith* was to accord them the same effect as must be accorded section 281 of the Constitution; whereas, the manifest purpose of subdivision 24 of section 104 was to restrain local or special legislation. The error in *Miller v. Griffith* is clear; though it should be remarked that the last clause in the quotation made from the opinion in that case is without fault. The local act under review relieved the judge of probate of certain duties that were but incidental to the service of that office and that officer, and, in consequence of the abolition of these duties, took from him (to be subsequently elected) the compensations theretofore allowed the judge of probate for these merely incidental services. Hence, the act under consideration did not, in any direct, primary sense, create, increase, or decrease the fees, percentages or allowances of a public officer. The subdivision quoted is not offended by this act.

[Dunn v. Dean.]

The local act is not void as upon any of the grounds asserted by the appellant, all of which are treated in this opinion. The wirt was properly denied.

Affirmed.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

### ON REHEARING.

McCLELLAN, J.— (9, 10) For the first time, in the application for rehearing, the appellant presents and presses the question whether in the passage of the local act under consideration the positive requirements of section 62 of the Constitution were observed. In determining questions of this character the only source of information are the journals of the houses of the Legislature.—*Robertson v. State*, 130 Ala. 164, 169, 30 South. 494. Section 62 provides: "No bill shall become a law until it shall have been referred to a standing committee of each house, acted upon by such committee in session, and returned therefrom, which facts shall affirmatively appear upon the journal of each house."

The Journal of the House of Representatives records the introduction of this bill (H. B. 863) and its reference to the standing committee on ways and means; and, instead of the consideration and report of the bill by the ways and means committee, recites its consideration and favorable report by the standing committee on mining and manufacturing. It is thus conclusively shown that the bill was referred to one standing committee and was later considered by and reported from another standing committee, to which the journal does not affirmatively recite the bill was referred. The bill was therefore not validly enacted into law, the positive requirements of section 62 of the Constitution not having been observed.—*Walker v. City Council*, 139 Ala. 468, 36 South. 23; *Tyler v. State*, 159 Ala. 126, 48 South. 672; among others. The bill never became a valid enactment. It is void. The rehearing must be granted; and the prayer of the petition for the writ of mandamus must also be granted.

The order and judgment of the circuit judge is reversed; and a judgment will be entered here awarding the writ of mandamus as prayed.

Reversed and rendered. All the Justices concur.