81 So.2d 542

**STATE ex rel. Richard L. JONES**

v.

**Felix G. STEELE.**

2 Div. 352.

Supreme Court of Alabama.

June 16, 1955.

---

I. 262 Ala. 41.

Murray A. Battles, Cullman, Sam Earle Esco, Jr., Selma, and Jas. B. Perdue, Browns, for appellant.

T. G. Gayle, Lapsley & Berry, Pitts & Pitts, Wilkinson & Wilkinson, Selma, for appellee.

PER CURIAM.

This is a quo warranto proceeding to determine whether appellee, Steele, has lawful authority to hold the office of tax collector of Dallas County.

There was a vacancy in the office of tax collector, which occurred on April 12, 1955, on account of the death of H. E. Kendrick who had been elected and qualified for a full term. Under the terms of an Act approved June 8, 1943, General Acts 1943, page 115, a tax collector for each county was due to be elected in November 1948, whose term of office was fixed at six years from the first day of October next after his election.—Title 41, section 19(2), Pocket Part, Code. Under that statute Kendrick's term of office would expire October 1st of this year when a new term would begin.

The question here pertains to the term which expires at that time.

Steele was selected to fill the unexpired term by the unanimous vote of the Probate Judge and members of the Court of County Commissioners of Dallas County at a meeting called for that purpose: all as provided by local act No. 197 of the Legislature in July 1949, General and Local Acts 1949, Regular Session, page 228. Steele immediately executed the necessary bond in duplicate with a surety company, the bond being payable in the required amount, was approved by the comptroller and conditioned as required by law. Section 77,

Title 41, Code. One copy was filed and recorded in the probate office, and the other in the office of the comptroller, and oath of office was administered on April 14, 1955. All of those matters duly appear of record as required by law. On the same day a commission was executed by the probate judge and all of the four members of the commissioners court purporting to commission Steele as tax collector for "the term prescribed by the Constitution and laws of the State of Alabama". On that day Steele went to Montgomery, accompanied by the probate judge and other friends, and went to the office of the comptroller where he deposited a duplicate of the executed official bond. He also had with him the certificate or commission issued by the probate judge and commissioners. The comptroller gave him a letter to the Secretary of State, which he took to her, and requested a commission. It was learned that the Governor had issued a commission to Richard L. Jones to fill the vacancy, and of course did not sign the commission for Steele.

The present controversy is whether the local act No. 197, passed over the Governor's veto in July 1949, General and Local Acts 1949, Regular Session, page 228, is violative of section 105 of the Constitution in view of the fact that there was then in effect a general statute, section 176, Title 41, Code, and also, in the alternative, whether a commission was necessary as required by sections 10 and 11, Title 41, to be signed by the governor and countersigned by the secretary of state.

The evidence shows that the Governor was of the opinion that the local act was void as violative of section 105 of the Constitution, and appointed Richard L. Jones under authority of section 176, Title 41, to whom he issued a commission.

A solution of that question is first necessary. Section 105, supra, contains the following provisions (not to mention those immaterial to the controversy): "No * * local law, except (not here material) shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this

state". It also makes it the duty of the courts, not the legislature, to determine that question. We have often considered the question of the duty which section 105 has cast upon the courts. We have again referred to the arguments made in the constitutional convention, and find nothing helpful so far as here material. Without at the moment referring to our cases on the subject, but again considering the language of section 105, we note that the crucial words here material are "in any case which is provided for by a general law".

The contention on behalf of relator is that there is a general law which provides for filling vacancies in the office of tax collector, to wit, section 176, Title 41, and therefore the legislature cannot pass a local law making a different provision for that locality.

■ Unquestionably the filling of a vacancy in the office of a county tax collector is provided for by a general law. But there is no general law which provides that it shall be done by the probate judge and county commissioners of that county. Section 105, supra, is, as its language indicates, for the prohibition of local legislation when the same is provided for by a general law. This was to relieve the legislature of useless labor, and extends to special and private laws, thereby prohibiting such legislation when the same relief may be had in courts or under a general law which has been enacted. Of course, this excludes the prohibitory local laws mentioned in section 104 of the Constitution. But does not apply unless the substance of the local law is the same as the general law then in effect.

We come now to a review of our cases in point. To begin with we note that the office of county tax collector is not a constitutional office. The legislature could enact a different law for each county as to the method of collecting its taxes. We have held that when a local act provided for a board of revenue in lieu of county commissioners, and fixed the term, mode of election, duties, etc., it was not violative of section 105, supra, though a general law accomplished the same ultimate result in respect to the management of county affairs. Dunn v. Dean, 196 Ala. 486, 71 So. 709. To the same effect is Hall v. Underwood, 258 Ala. 392, 63 So.2d 683, citing City Council of Montgomery v. Reese, 149 Ala. 188, 43 So. 116. The opinion in Dunn v. Dean, supra, reviews our cases to its date. They are consistent with the theory that if the local law makes a material change in the general law on the subject to satisfy local conditions of which the legislature is the sole judge, it is not prohibited by section 105 of the Constitution. The difference must be material to have that effect. But the fact that the local law is not in *ipsis verbis* the language of the general law does not exempt it from the operation of section 105, supra. In Dunn v. Dean, supra [196 Ala. 486, 71 So. 714], is the following: "It seems, then, that this provision of the Constitution was intended to prohibit the enactment of special, private, or local laws to meet the purposes of the particular cases which may be accomplished by proceedings outside of the Legislature under the provisions of general statutes enacted to meet all cases of their general character. And it is made the duty of the Legislature to pass general laws under which local and private interests shall be provided for and be protected. Const. § 109."

We have so many cases on the subject we shall not attempt to review each of them. The case of Standard Oil Co. v. Limestone County, 220 Ala. 231, 124 So. 523, 526, contains a statement whose essence seems to extend through all the cases, variously expressed, that: "It is fully settled that this section does not forbid local legislation on subjects not prohibited by section 104, merely because a general law deals with the same matter. If, in the judgment of the Legislature, local needs demand additional or supplemental laws substantially different from the general law, the Legislature has power to so enact." The foregoing was quoted in Van Sandt v. Bell, 260 Ala. 556, 71 So.2d 529, where we also referred to the statement of the principle that the local act is not prohibited by section 105, supra, when it is different from

and works a partial repeal of the general laws of the State in the territory affected. This was taken from Talley v. Webster, 225 Ala. 384, 143 So. 555, where it is also mentioned that the local act changes the existing law regulating the jurisdiction of justice courts in Mobile County. That was held to be a legislative question, and not to offend section 105, supra. And in Standard Oil Co. v. Limestone County, supra, it is said that the question for the courts is whether there is a substantial difference between the general and local law. The foregoing principle was again stated in State ex rel. Bozeman v. Hester, 260 Ala. 566, 72 So.2d 61, where it is also noted that section 105, supra, does not affect the right to change by local law the method of selecting a county superintendent of education, citing State ex rel. Austin v. Black, 224 Ala. 200, 139 So. 431.

■ We cannot now depart from that settled construction of section 105 of the Constitution. And when it is here applied it means that since the local act No. 197, supra, is materially different from the general statute, section 176, Title 41, Code, in the manner of filling the vacancy in the office of tax collector of Dallas County, it is not violative of section 105.

It is also insisted by relator that Steele's acts as tax collector are an usurpation of the office because he has no commission as such, due to the requirements of sections 10, 11, 14 and 176, Title 41. Section 10 provides that the officers named therein, including tax collectors, "before entering upon and exercising the duties of their respective offices, must obtain a commission". Section 11 provides that the commission must issue in the name and by authority of the State of Alabama, sealed with the great seal, and signed by the governor and countersigned by the secretary of state, except the commission of the secretary which must be signed by the governor. Section 14 authorizes all county officers and certain other local officers to exercise the functions of their office, to which they are *elected,* after they receive their certificates of election whether they have received their commission or not.

It will be observed that section 14 only applies to officers who have been elected to office. This does not seem to apply to one who has been selected by the proper appointing authority to fill a vacancy. Section 176 provides that appointees must be commissioned and hold office for the unexpired term. That means appointees as provided by that statute. It is a part of a statute which provides for the governor to fill vacancies in all State and county offices, *except those otherwise provided.* It is therefore not authority requiring commissions for appointees which are otherwise required to be made than by its provisions. Since we think that it has now become otherwise provided by local law, No. 197, supra, therefore, section 176 does not furnish the necessity for a commission to be signed by the Governor. So we return to section 10, supra, in that respect. It is specific and clear that all tax collectors must obtain a commission before entering upon the duties of the office. This, as we have shown, does not include tax collectors *elected* to that office. Section 14, supra. Section 176, supra, seems also to exempt appointees whose appointment is provided by law other than by its authority.

If that is a correct interpretation of section 176, supra, it should likewise furnish an exception to section 10, supra, requiring a commission, and section 11, supra, that it be signed by the Governor. That seems to be the effect of what is said in Draper v. State ex rel. Patillo, 175 Ala. 547, 57 So. 772, 773. The question there did not directly involve the situation now before us, but pertained to a city commissioner. There relator had been appointed by the governor to the office, but the governor had not sent him a commission. The governor later undertook to cancel the appointment and to appoint another. The question was whether relator was duly appointed without a commission. The first city commissioners were required by the act to be appointed by the governor, and he undertook to do so. The authority was not dependent upon section 1474 (now section 176, supra). That Code section requires a commission when it is necessary to fill a vacancy in a *State or county office.* Section 10, supra, which re-

quires a commission does not include city offices. The only statutory requirement, if any, is in section 176, and that only relates to State or county offices. A majority of the Court held in the Draper case that section 176 did not apply because it was not a State or county office and section 10 did not include city offices. However, the Court gave expression to some important principles which may not have been pertinent in view of the conclusion reached, but which seem to be well fortified and well considered. One such statement is that: "Where the power of appointment is absolute, and the appointee has been determined upon, no further consent or approval is necessary, and the formal evidence of the appointment, the commission, may issue at once. Where, however, the assent or confirmation of some other officer or body is required, the commission can issue or the appointment be complete only when such assent or confirmation is obtained. * * * In either case, the appointment becomes complete when the last act required of the appointing power is performed." The foregoing is quoted from Mechem on Public Offices, section 114, page 46. "If the commission is to be signed by the appointing power, the issuance of same is essential to a completion of the appointment. * * If, however, such formal act is to be performed by some other than the appointing power, it constitutes no part of the appointing power." Citing the Draper case, supra, and many others, 42 Am.Jur. 965, states those principles as prevailing.

The above principles are likewise stated in Hale v. State ex rel. Algee, 237 Ala. 191, 186 So. 163, 167, where it is said: "The appointment to office becomes complete when, and only when, the last act required of the appointing power has been performed. This seems to be an universal rule", citing many authorities. The Court held the law prescribing the manner for the appointment of a court reporter by the judges must be pursued, and the appointment was not complete until that was done. But when complete, nothing further was required to fill the office. This principle is also annotated in 89 A.L.R. 156, et seq. The authorities cite Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60, but it is not directly in point.

█ It is our view that local act No. 197 was intended to and did confer on the probate judge and county commissioners the power and duty to fill a vacancy in the office of tax collector of the county, and, therefore, to do all things necessary to a completion. That they were to do the last act necessary to the filling of the vacancy; that section 176, supra, only applies to vacancies required to be filled by the Governor, expressly excepting those otherwise provided. Also that section 10, supra, requiring a commission signed as provided in section 11, supra, does not apply when there is a law making other provision.

█ In the instant case the probate judge and county commissioners unanimously selected Steele; he made the required oath; executed a bond in duplicate with surety approved by the comptroller, and left one copy with him and one with the probate judge; and then a commission signed by the probate judge and each of the county commissioners was executed and delivered to him (Steele). We think that was all that was necessary. It results that the judgment of the lower court should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the CHIEF JUSTICE under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, STAKELY, GOODWYN, and MERRILL, JJ., concur.